UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JAY VAN JACKSON, III, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) CASE NO. 2:08-CV-0644-SLB |
| | ) |
| CONSTANCE REESE, Warden, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM OPINION**

Petitioner Jay Van Jackson was convicted in 1997 in the United States District Court for the District of Wyoming of "[1] conspiracy to receive, possess, and transport stolen firearms, in violation of 18 U.S.C. § 371; [2] possession of a firearm in relation to a drug trafficking felony, in violation of 18 U.S.C. § 924©; and [3] being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1)." (Doc. 4, Ex. 5, *United States v. Jackson*, 62 Fed. Appx. 882, 882 (10th Cir. 2003)(unpublished).).[1] Pursuant to 28 U.S.C. § 2241 and the savings clause of § 2255, petitioner now challenges his conviction under 18 U.S.C. § 924(c)(1) for use of a firearm during and in relation to a drug trafficking crime in light of the Supreme Court's decision in *Watson v. United States*, 552 U.S. 74 (2007).[2]

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

[2] In *Watson*, the Supreme Court held, "Given ordinary meaning and the conventions of English, we hold that a person does not 'use' a firearm under § 924(c)(1)(A) when he receives it in trade for drugs." *Watson*, 552 U.S. at 83.

## I. **BACKGROUND**

In affirming petitioner's conviction, the Tenth Circuit set forth the following facts:

[Petitioner], [Paul Sheldon] Cromartie, and co-defendant John Henry Wilson were charged together in a seven-count indictment and were jointly tried in February 1997. [Petitioner], Cromartie, and Wilson were charged with conspiring to receive, possess, and transport stolen firearms, in violation of 18 U.S.C. § 371 (count one). Cromartie and [petitioner] were also charged with possession of a firearm in relation to a drug trafficking felony, in violation of 18 U.S.C. § 924© (count five), and possession of a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1) (counts two and six). Cromartie was further charged with possession of a firearm while under indictment, in violation of 18 U.S.C. § 922(n) (count three), and unlawful manufacture of a firearm, in violation of 26 U.S.C. §§ 5822, 5861(f), and 5871 (count four).

At trial, the government introduced evidence that [petitioner], Cromartie, and Wilson had conspired to unlawfully possess, store, and transport firearms stolen by three juveniles. The three juveniles, Jayson, Jerry, and Will, testified at trial that they escaped from the Goodwill Industries secure facility on March 23, 1996. About three days after their escape, they stole a vehicle and drove from Cheyenne to Centennial, Wyoming. There they burglarized approximately six cabins, stealing primarily alcohol and small items such as gloves and flashlights, before stealing another vehicle and driving back to Cheyenne.

Once in Cheyenne, the juveniles met up with [petitioner] (Will's cousin) and Cromartie, who were staying at the Quality Inn. From this time through April 10, 1996, the time frame of the conspiracy as charged in the indictment, [petitioner] and Cromartie stayed at a number of motels in Cheyenne, changing motels every few days. The juveniles stayed with Defendants in the motels for much of this time. During this period, the juveniles stole firearms from three homes around Cheyenne.

On March 30, Jayson and Jerry burglarized a home on Ames Avenue ("Ames residence"), stealing a semi-automatic shotgun. After stealing the shotgun, they hid it in an abandoned garage. When they returned to the motel where [petitioner] and Cromartie were then staying, they told Defendants about the shotgun. [Petitioner] arranged for a friend to take Jerry to retrieve the shotgun. After the shotgun was brought to the motel room, Cromartie

2

sawed off the barrel and stock of the shotgun with a hacksaw borrowed from the motel.

Later that night, Jayson and Jerry burglarized a residence located on the F.E. Warren Air Force Base ("Air Force Base residence"). [Petitioner] arranged for a friend, "Dirty Red," to drive Jayson and Jerry onto the base for the burglary and to pick them up when they had finished. Jayson and Jerry stole six firearms from the home. Jayson testified that in return for firearms taken from the Ames and Air Force Base residences, [petitioner] paid them in cash and crack cocaine.

A few days later, [petitioner] and Cromartie drove the three juveniles to a trailer they had been told contained firearms. [Petitioner] and Cromartie stayed behind in the car while the juveniles broke into the trailer. The juveniles stole some personal items and drugs, but did not find any firearms. Later that night, Jayson and Jerry burglarized a home near the motel to obtain money for their motel room. Jerry was caught by the police that night.

On April 4, while [petitioner] and Cromartie were staying at the Days Inn, the motel manager called the police because [petitioner], Cromartie, and others were having a party. When the police arrived, Will and Jayson jumped out the window and ran away. [Petitioner] and Cromartie were arrested. [Petitioner] was released almost immediately; Cromartie was held in jail.

Will and Jayson met [petitioner] again the next day through his friend "Dirty Red." That night, Will and Jayson burglarized a residence on Sagebrush ("Sagebrush residence"). [Petitioner] drove them to the residence and dropped them off in a nearby alley. They then burglarized the home and paged [petitioner] afterwards to pick them up. Will and Jayson stole six firearms and some knives from the Sagebrush residence. [Petitioner] initially offered Jayson a beeper and a pistol for the firearms, but Jayson declined the offer because he wanted money for the guns. [Petitioner] told him he would have to wait for the money. The firearms were later moved to Wilson's house.

On April 10, Cheyenne police obtained a search warrant and searched Wilson's home for firearms taken in the burglaries of the Ames, Air Force Base, and Sagebrush residences. The police recovered most of the firearms stolen in the burglaries, including a sawed-off shotgun identified as the shotgun stolen from the Ames residence.

>       The juveniles testified that before the burglaries, they discussed stealing firearms with [petitioner] and Cromartie and were told by Defendants that if they got the guns, they would be paid well for them. There was also evidence presented at trial concerning Defendants' transportation and storage of the firearms in the various motel rooms, and evidence that Defendants planned to transport firearms to Denver, Colorado and planned to put the firearms "on the street."
>
>       Following trial, [petitioner] and Cromartie were found guilty of all the charges. [Petitioner] was sentenced to imprisonment for 120 months on count six, 60 months on count one, and 60 months on count five, all to be served consecutively. [Petitioner] also received supervised release and was ordered to pay a special assessment. . . .

(Doc. 4, Ex. 2, *United States v. Jackson*, 161 F.3d 18, 1998 WL 642410, *1-*2 (10th Cir. 1998)(footnote omitted)(unpublished).)

On appeal, petitioner argued that "the district court improperly admitted evidence of uncharged bad acts," the court "abused its discretion in allowing the juveniles to give lay testimony concerning the crack cocaine they allegedly received in partial payment for the firearms taken in two of the burglaries," the court "erred in calculating his base offense level," the court "erred in applying an enhancement for obstruction of justice . . . based on evidence that [petitioner had] threatened a witness," and the court "erred in enhancing his sentence based on his role as a leader in the offense." (*Id*. at *3, *4, *9, *10, *11.) The Tenth Circuit affirmed his conviction. (*Id*. at *12.)

After his conviction was affirmed, petitioner filed a number of motions seeking to set aside his conviction; these motions were unsuccessful. (*See* doc. 14 at 2-4.)

4

Petitioner filed the current Petition for Writ of Habeas Corpus on April 11, 2008. (Doc. 1.) The Magistrate Judge issued his Findings and Recommendation on January 9, 2009, recommending that the Petition be denied. (Doc. 11. at 7.) Petitioner has filed Objections to the Findings and Recommendation. (Doc. 13.)

## II. **DISCUSSION**

The Magistrate Judge recommends that this court deny the Petition on the ground that the savings clause of § 2255 is inapplicable. (Doc. 11 at 7.) Petitioner contends, "Since [petitioner] attempted to pursue his claim in his initial 2255 motion, his claim fits within the savings clause, and he should be permitted to access the 2241 habeas remedy." (Doc. 13 at 5.) After careful review of the record, this court agrees with the finding of the Magistrate Judge that this Petition is improperly filed pursuant to 28 U.S.C. § 2241, and is due to be dismissed.

In the typical situation, a petitioner challenges the validity of his federal conviction or sentence by filing a motion under 28 U.S.C. § 2255.[3] However, the savings clause of § 2255 permits federal prisoners to file a habeas petition pursuant to § 2241 in limited circumstances. *See* 28 U.S.C. §§ 2241(a), 2255.

The savings clause of 28 U.S.C. § 2255(e) provides:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be

---

[3]Similarly, in the typical situation, a petitioner convicted in State court files his petition challenging that conviction and sentence pursuant to 28 U.S.C. § 2254.

5

> entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

28 U.S.C. § 2255(e). Thus, § 2241 may be used *only* if the remedy under § 2255 is inadequate or ineffective. *Id*.; *see also Darby v. Hawk-Sawyer*, 405 F.3d 942, 945 (11th Cir. 2005)(" The 'savings clause' of § 2255 permits a prisoner to file a § 2241 petition *only* if an otherwise available remedy under § 2255 is 'inadequate or ineffective' to test the legality of his detention.")(emphasis added). The Eleventh Circuit Court of Appeals has held that § 2255 is inadequate or ineffective within the meaning of the savings clause when:

> (1) that claim is based upon a retroactively applicable Supreme Court decision; (2) the holding of that Supreme Court decision establishes the petitioner was convicted for a nonexistent offense; *and* (3) circuit law squarely foreclosed such a claim at the time it otherwise should have been raised in the petitioner's trial, appeal, or first § 2255 motion.

*Wofford v. Scott*, 177 F.3d 1236, 1244 (11th Cir. 1999). If all three of these criteria are met, "the savings clause of § 2255 applies to open the portal to a § 2241 proceeding." *Id*. at 1244 and n.3. Regarding the inadequacy or ineffectiveness of the § 2255 remedy, the Eleventh Circuit has held:

> The "savings clause" of § 2255 permits a prisoner to file a § 2241 petition only if an otherwise available remedy under § 2255 is "inadequate or ineffective" to test the legality of his detention. 28 U.S.C. § 2255. The Antiterrorism and Effective Death Penalty Act's (AEDPA's), Pub. L. No. 104-132, 110 Stat. 1214 (1996), restrictions on successive § 2255 motions, standing alone, do not render that section "inadequate or ineffective" within the meaning of the savings clause, and, consequently, a petitioner who has filed and been denied a previous § 2255 motion may not circumvent the successive motion restrictions simply by filing a petition under § 2241.

6

> *Wofford v. Scott*, 177 F.3d 1236, 1245 (11th Cir. 1999).  The savings clause only applies to "open a portal" to a § 2241 proceeding when (1) the "claim is based upon a retroactively applicable Supreme Court decision; (2) the holding of that Supreme Court decision establishes the petitioner was convicted for a non-existent offense; ***and***, (3) ***circuit law squarely foreclosed such a claim at the time it otherwise should have been raised***."  *Id*. at 1244. . . .
>
> Here, [petitioner's] § 2241 petition was an attempt to circumvent the AEDPA's restrictions on successive § 2255 motions.  Darby filed a previous § 2255 motion, which the district court denied with prejudice.  Furthermore, before filing this § 2241 petition, Darby filed an application for leave to file a successive § 2255 motion, and we denied his application.  ***A petitioner who has filed and been denied a previous § 2255 motion may not circumvent the successive motion restrictions simply by filing a petition under § 2241***.  *Wofford*, 177 F.3d at 1245.

*Darby v. Hawk-Sawyer*, 405 F.3d 942, 944-45 (11th Cir. 2005)(emphasis added).  Petitioner must establish that he "was . . . convicted of [a] crime which a retroactively applicable Supreme Court decision overturning prior circuit precedent has made clear is nonexistent;" he must show that his claims "rest upon a *circuit law-busting*, retroactively applicable Supreme Court decision."  *Wofford*, 177 F.3d at 1245 (emphasis added).  "Title 28 § 2255 is not rendered inadequate or ineffective to challenge the legality of a petitioner's detention merely because the applicable limitation period has expired or a subsequent motion under the section would be barred as successive."  *Cater v. Drew*, No. 2:07-cv-0739-MEF, 2009 WL 1285525, *4 (M.D. Ala. May 6, 2009).  The burden of coming forward with evidence

affirmatively showing the inadequacy or ineffectiveness of the § 2255 remedy rests with petitioner. *See McGhee v. Hanberry*, 604 F.2d 9, 10 (5th Cir. 1979).[4]

The Magistrate Judge found that petitioner had not shown that circuit law foreclosed his *Watson* claim because the *Watson* decision did not overrule prior circuit precedent. He noted:

> Jackson has not identified circuit law from either the Eleventh Circuit or the Tenth Circuit which foreclosed his *Watson* claim at the time it otherwise could have been raised in his trial, appeal or first § 2255 motion. In *United States v. Montano*, 398 F.3d 1276, 1283 (11th Cir. 2005), prior to the *Watson* decision, the Eleventh Circuit held that a defendant did not "use" a firearm within the meaning of § 924(c)(1)(A) when he traded drugs for a firearm. In 2007, approximately six months before the April 17, 2007[,] *Watson* decision, the Tenth Circuit in United States v. Luke-Sanchez stated:
>
>> We have not had occasion to reach the question [of whether trading drugs for guns constituted use of a firearm] and post-*Bailey* legislation has made it less likely we will have the opportunity to do so. Congress amended the relevant statutory text in 1998 to also criminalize possession of a firearm "in furtherance of" a drug trafficking crime. § 924(c)(1)(A); An Act To Throttle Criminal Use of Guns, Pub.L. No. 105-386, sec. 1(a)(1), § 924(c)(1)(A), 112 Stat. 3469, 3469 (1998). Whereas the pre-1998 language required courts to determine whether a defendant "used" a firearm, the amended language explicitly criminalizes simple possession "in furtherance of" a drug crime. Luke-Sanchez does not contest his possession of the two pistols, leaving the narrower question of whether trading drugs for guns "further[s]" the crime of drug trafficking. For substantially the same reasons articulated by the Sixth Circuit in *United States v. Frederick*, 406 F.3d 754, 764 (6th Cir.2005), we are satisfied that it does.

---

[4]Decisions of the former Fifth Circuit Court of Appeals rendered prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

8

> *United States v. Luke-Sanchez*, 483 F.3d 703, 705-706 (10th Cir. 2007).
>
> Because neither Tenth nor Eleventh Circuit case law foreclosed Jackson from presenting a *Watson* type claim in a timely § 2255 motion or earlier, the savings clause is inapplicable.

(Doc. 11 at 6-7.)

In this case, petitioner claims that his *Watson* claim was preserved because he included it in his initial § 2255 petition. (Doc. 13 at 4.) This admission is fatal to his claim that the remedy under § 2255 is inadequate or ineffective. *See Tripati v. Henman*, 843 F.2d 1160, 1162 (9th Cir. 1988)("A remedy is not inadequate or ineffective under section 2255 merely because the sentencing court denied relief on the merits."); *Weiss v. Yates*, No. 5:02-cv-204-Oc-10GRJ, 2008 WL 5235162, *9 (M.D. Fla. Dec. 15, 2008)("[T]he implicit argument that his present claims could and should have been made under § 2255 is self defeating. If that is so, and he cannot make the requisite showing under *Wofford*, then his claims are procedurally barred and that's the end of his case.").

## CONCLUSION

Based upon the court's consideration of all the materials in its file, including the Magistrate Judge's Findings and Recommendation, (doc. 11), and petitioner's Objections, (doc. 13), the Magistrate Judge's findings, to the extent set forth above, are adopted and his recommendation is accepted. Accordingly, petitioner's Objections are due to be overruled and the Petition for Writ of Habeas Corpus is due to be denied. A Final Judgment will be entered contemporaneously with this Memorandum Opinion.

9

**DONE**, this 12th day of February, 2010.

                                             */s/ Sharon Lovelace Blackburn*
                                             SHARON LOVELACE BLACKBURN
                                             CHIEF UNITED STATES DISTRICT JUDGE